# UNITED STATES DISTRICT COURT
for the

District of New Jersey

| United States of America | ) | |
|---|---|---|
| v. | ) | Case No. |
| SALVATORE PICCOLO | ) | Mag. No. 18-5512 (KMW) |

*Defendant(s)*

**ORIGINAL FILED**
MAR 1 3 2018
WILLIAM T. WALSH, CLERK

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.

On or about the date(s) of ____June 30, 2017____ in the county of ____Camden____ in the _____ District of ____New Jersey____, the defendant(s) violated:

| *Code Section* | *Offense Description* |
|---|---|
| Title 21 U.S.C. Sections 841(a)(1) and 841(b)(1)(A) | SEE ATTACHMENT A |

This criminal complaint is based on these facts:

PLEASE SEE ATTACHMENT B (AFFIDAVIT)

☑ Continued on the attached sheet.

_____
*Complainant's signature*

Special Agent Mark Hindle, FBI
*Printed name and title*

Sworn to before me and signed in my presence.

Date: March 13, 2018

_____
*Judge's signature*

City and state: ____Camden, New Jersey____   Honorable Karen M. Williams, U.S. Magistrate Judge
*Printed name and title*

CONTENTS APPROVED

UNITED STATES ATTORNEY

BY: _____

PATRICK C. ASKIN
Assistant United States Attorney

Date: _____3/12/18_____

## ATTACHMENT A

On or about June 30, 2017, in Camden County, in the District of New Jersey and elsewhere, defendant

### SALVATORE PICCOLO

did knowingly and intentionally distribute and possess with intent to distribute 50 grams or more of methamphetamine, a Schedule II controlled substance.

In violation of Title 21, United States Code, Sections 841(a)(1) and (b)(1)(A).

## ATTACHMENT B
## AFFIDAVIT

Mark Hindle, your affiant, having been sworn according to law, deposes and says:

1. I have been a special agent of the FBI for approximately 18 years. I am presently assigned to the Atlantic City Resident Agency of the Newark Division, and have been for the past 13 years. I have been trained in various aspects of federal law enforcement, and during my employment with the FBI I have been involved in numerous investigations and prosecutions, including those involving criminal enterprises and organized crime, white collar crime, public corruption, violent crime, narcotics violations, and money laundering. In the course of those investigations, I have utilized and monitored court authorized wiretaps, conducted surveillance, executed search warrants, debriefed witnesses and cooperating witnesses, and utilized undercover employees. I have acted as the "case" agent or lead investigative agent in numerous criminal investigations.

### PURPOSE OF AFFIDAVIT

2. This affidavit is being submitted in support of an application for a criminal complaint and arrest warrant for Salvatore PICCOLO, charging him with distribution of 50 grams or more of methamphetamine, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A) (the TARGET OFFENSE).

3. Based on my personal participation in this investigation, I submit that the facts contained in this affidavit show that there is probable cause to believe that Salvatore Piccolo has possessed with the intent to distribute and distributed 50 grams or more of methamphetamine, a Schedule II controlled substance, in violation of Title 21, United States Code, Sections 841(a)(1) and 841(b)(1)(A).

4. Since this Affidavit is being submitted for the limited purpose of establishing probable cause for the Court's issuance of a criminal complaint and arrest warrant, I have not included each and every fact known to me concerning this investigation. Rather, I have set forth the facts believed to be necessary to establish probable cause for the criminal complaint and arrest warrant for Salvatore PICCOLO for possessing with the intent to distribute and distributing a controlled substance, that is 50 grams or more of methamphetamine.

5. I make this affidavit upon my own personal knowledge and from oral and written reports, and documents from the FBI and other law enforcement agencies, from speaking with other agents and detectives involved in this investigation, from reviewing surveillance logs and speaking with surveillance agents, from reviewing available photographs and/or video evidence, from reviewing audio recordings and/or transcripts of audio recordings, from interviewing confidential informants, from reviewing consensually recorded calls and text messages, and from reviewing evidence obtained during controlled purchases of controlled substances during this investigation.

## FACTS ESTABLISHING PROBABLE CAUSE FOR THE OFFENSE

6. On June 30, 2017 an undercover FBI agent (UCE #1) met with Salvatore PICCOLO at a restaurant in Atlantic County, New Jersey. The purpose of the meeting was so that UCE #1 could purchase a quantity of crystal methamphetamine from Salvatore PICCOLO. The meeting was set up during several phone calls earlier the same day between UCE #1 and Salvatore PICCOLO, which were all recorded by FBI agents and the recordings have been maintained as evidence in this case.

7. FBI surveillance agents observed UCE #1 arrive in his vehicle at the restaurant at approximately 12:49 p.m. UCE #1 exited his vehicle and entered the restaurant at approximately

1:04 p.m. At 1:06 p.m., UCE #1 and Salvatore PICCOLO walked to UCE #1's undercover vehicle and both got in the vehicle, with PICCOLO entering the undercover vehicle on the front passenger side. At 1:09 p.m., both UCE #1 and PICCOLO got out of the vehicle and entered the restaurant. At 1:12 p.m., UCE #1 left the restaurant and entered his vehicle and drove out of the restaurant parking lot. At 1:15 p.m., Salvatore PICCOLO left the restaurant parking lot driving a white BMW sedan with a Pennsylvania license plate. PICCOLO departed the location.

8. According to UCE #1, after initially greeting each other inside the restaurant, UCE #1 and PICCOLO went to UCE #1's vehicle and PICCOLO entered the front passenger side. Inside the vehicle, UCE #1 and PICCOLO discussed UCE #1 purchasing four ounces of crystal methamphetamine from PICCOLO. UCE #1 then handed PICCOLO $5,600 in United States currency inside the vehicle. PICCOLO told UCE #1 that he did not have the methamphetamine available and that he would go get it after their meeting. UCE #1 and PICCOLO then went back in the restaurant briefly, before leaving the area a few minutes later in separate vehicles. PICCOLO advised UCE #1 that he had to go to Philadelphia to get the methamphetamine.

9. Prior to meeting a second time the same day, UCE #1 and PICCOLO exchanged multiple phone calls to determine when and where they should meet so that UCE #1 could get the four ounces of crystal methamphetamine that he had already paid PICCOLO for. UCE #1 and PICCOLO agreed that they should meet up at the Buffalo Wild Wings parking lot just off Exit 41 on the Atlantic City Expressway. These phone calls were recorded and preserved as evidence.

10. At approximately 3:33 p.m., UCE #1 arrived at the Buffalo Wild Wings parking lot off Exit 41 of the Atlantic City Expressway, parked and sat in his vehicle. A short time later,

at approximately 3:45 p.m., Salvatore PICCOLO arrived in the Buffalo Wild Wings parking lot in his vehicle, which was the same white BMW sedan with Pennsylvania registration that FBI surveillance agents had seen earlier in the day during the meeting with UCE #1 at the restaurant in Atlantic County, New Jersey. PICCOLO got out of his vehicle, walked to the front of the restaurant, looked inside and walked back to his vehicle. At approximately 3:46 p.m., PICCOLO opened the trunk of the BMW and then closed it. PICCOLO then walked to UCE-1's vehicle carrying a black bag and entered the front passenger seat of UCE-1's vehicle. At approximately 3:49 p.m., PICCOLO got out of UCE-1's vehicle and walked back into his BMW, carrying the black bag. PICCOLO opened the trunk of the BMW and then closed the trunk. He then entered the driver's seat of the vehicle and departed the parking lot at approximately 3:51 p.m.

11. According to UCE-1, PICCOLO entered UCE #1's vehicle on the front passenger side. PICCOLO took a brown paper bag out of a shoulder bag that he had carried with him from his vehicle. Inside the brown bag, was a clear plastic bag containing a white crystal like substance, which PICCOLO handed to UCE #1 inside UCE #1's vehicle. After a brief conversation, PICCOLO got out of UCE #1's vehicle and both UCE #1 and PICCOLO left the Buffalo Wild Wings parking lot in their own vehicles. After leaving the parking lot, UCE #1 met up with your affiant and provided me with the clear plastic bag containing the narcotics purchased from Salvatore PICCOLO. The purchased substance was marked as a drug exhibit and submitted by the agents to the DEA Northeast Regional Lab for analysis. The drug exhibit was tested by a DEA forensic chemist and was determined to be 111 grams of methamphetamine that had a purity level of 98%.

12. Several months before the purchase of methamphetamine from PICCOLO on June 30, 2017, UCE #1 had been introduced to PICCOLO by a FBI confidential human source

(CHS #1) UCE #1 had met with PICCOLO on a number of occasions prior to the June 30, 2017 meeting.[1]

    13.  According to CHS #1, PICCOLO is a made member of the Philadelphia La Cosa Nostra ("LCN") organized crime family. PICCOLO has a prior federal conviction for conspiracy to distribute controlled substances from an arrest in August 1991. In 1992, PICCOLO was sentenced to 10 years' imprisonment in federal court for this felony drug conviction. In August 2015, PICCOLO was arrested in New Jersey for distribution of marijuana. PICCOLO was convicted of a third degree felony in the Superior Court of Atlantic County and on August 5, 2016, PICCOLO was sentenced to two years of probation. It appears from the available criminal records that PICCOLO was on probation at the time of this offense and is still on probation with the Atlantic County Superior Court.

---

[1] It should be noted that another FBI undercover agent, UCE #3, also purchased crystal methamphetamine from Salvatore PICCOLO. The second drug transaction with PICCOLO occurred on September 19, 2017 and involved 55.5 grams of methamphetamine with 98% purity, which was purchased by UCE #3 directly from PICCOLO.